Clarence CLOCKEDILE et al.

v.

STATE of Maine DEPARTMENT OF TRANSPORTATION et al.

Supreme Judicial Court of Maine.

Argued Sept. 11, 1981.

Decided Nov. 24, 1981.

David J. Corson (orally), Yarmouth, for Rhodena Clockedile.

Robert N. Walker (orally), Yarmouth, for Clarence Clockedile.

Preti, Flaherty & Beliveau, Christopher D. Nyhan (orally), John P. Doyle, Jr., Portland, for Town of Yarmouth.

Thomas Reeves (orally), John B. Wlodkowski, Hope Hilton, Dept. of Transp., Augusta, for Dept. of Trans.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

Plaintiffs appeal from the dismissal by the Superior Court (Cumberland County) of their claims against the State of Maine Department of Transportation (the MDOT) and the Town of Yarmouth. We sustain the dismissal as to the MDOT, but vacate the dismissal as to the Town of Yarmouth.

On August 23, 1977, the MDOT issued a highway opening permit to the Town of Yarmouth on behalf of N. E. Construction Company and its subcontractor, Ted Mundy d/b/a Thor Construction, for the purpose of installing an eight-inch sanitary sewer across Portland Street in Yarmouth. The sewer was to serve a new subdivision named Abby Lane. On the back of the permit, the MDOT listed several conditions, one of which was that "[t]he travelling public shall be adequately protected." Mr. and Mrs. Clockedile, plaintiffs in this action, suffered physical injury on August 25, 1977, when the car they were driving dropped into an unmarked ditch in Portland Street that had been dug pursuant to the permit.

More than seventeen months later, plaintiffs, by a complaint stating the facts as summarized above, sued the MDOT,[1] the Town, N. E. Construction Company, and Mr. Mundy. The Superior Court dismissed the claim against the MDOT as barred by sovereign immunity, and the claim against the Town as time-barred. After remand by this court on a premature appeal, the justice below on February 25, 1981, ordered final judgment for those two defendants under M.R.Civ.P. 54(b).[2]

. I.

The Maine Tort Claims Act, 14 M.R.S.A. ch. 741 (1980), provides the framework for governmental liability in Maine. Section 8103(1) of that act establishes that "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." The act lists ten types of official action specifically immunized, including "[t]he undertaking, or failure to undertake, any judicial or quasi-judicial act, including, but not limited to, the granting, granting with conditions, refusal to grant or revocation of any license, permit, order or other administrative approval or denial." 14 M.R.S.A. § 8103(2)(B). The ten types of governmental action enumerated "are cited as examples and [are not intended] to limit the general immunity provided by [section 8103]." 14 M.R.S.A. § 8103(2). From this general rule of immu-

1. In this action brought under the Maine Tort Claims Act, 14 M.R.S.A. ch. 741 (1980), plaintiffs named as one defendant the "State of Maine Department of Transportation." The Tort Claims Act sanctions the naming of either the State or the MDOT. Section 8104 of that act makes "governmental entities" liable for negligent performance of certain specified activities, including road construction and repair. "Governmental entity" is defined in 14 M.R.S.A. § 8102(2) (1980) to mean and include "the State and [local] political subdivisions." "State" is in turn defined to mean "the State of Maine or any office, department, agency, authority, commission, board, institution, hospital or other instrumentality thereof, including the Maine Turnpike Authority, the Maine Port Authority and all such other state entities." 14

M.R.S.A. § 8102(4) (1980). The Tort Claims Act thus contemplates suit against either the State directly or one of its departments such as the MDOT. A cautious lawyer would avoid any question on this score by naming the State of Maine as the defendant liable for the negligence of one of its departments.

2. We do not here apply the rule of *Cole v. Peterson Realty, Inc.*, Me., 432 A.2d 752, 757 (1981), requiring the Superior Court "henceforth" to state the reasons for its Rule 54(b) "determination that there is no just reason for delay," only because the Rule 54(b) certification in the case at bar was entered prior to our decision in *Cole*.

nity, the act in section 8104 carves out limited areas of liability. One such area, the only one at issue here, is described as follows:

**Exceptions to immunity**

A governmental entity shall be liable for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:

. . . .

4. Arising out of and occurring during the performance of construction, street cleaning or repair operations on any highway, town way, sidewalk, parking area, causeway, bridge, airport runway or taxiway including appurtenances necessary for the control of such ways including but not limited to street signs, traffic lights, parking meters and guardrails.

14 M.R.S.A. § 8104(4).

■ The Superior Court correctly dismissed the claim against the MDOT. Its involvement in the events leading to this suit extended only to the issuance of a road opening permit to the Town. While such issuance constituted the legal predicate to the ditch digging, it would be a perversion of plain language to construe that act as "the performance of construction . . . or repair operations on any highway" made actionable against a governmental entity by 14 M.R.S.A. § 8104(4) (1980). Moreover, the MDOT's action falls squarely within the category of judicial or quasi-judicial acts for which the legislature has expressly retained sovereign immunity in 14 M.R.S.A. § 8103(2)(B).

Although plaintiffs recognize, as they must, that the mere granting of the permit could not have opened the MDOT to liability, they urge that by specifying on the back of the permit that the permittee Town take sufficient precautions to safeguard the traveling public, the MDOT undertook a duty of supervision, the breach of which proximately caused plaintiffs' injuries. No precedent is urged in support of this theory.

In response, the MDOT cites persuasive though not binding authority from New York, holding the state to be under no duty to protect third party interests in granting permits. *See Village of Nyack v. Diamond*, 38 A.D.2d 453, 330 N.Y.S.2d 817 (1972); *Van Buskirk v. State*, 38 A.D.2d 349, 329 N.Y.S.2d 381 (1972).

To reject plaintiffs' argument, we need not make a decision as broad as that of the New York court. In Maine, sovereign immunity is the rule, and liability for governmental entities the statutorily created, narrowly construed exception. *See Cushing v. Cohen*, Me., 420 A.2d 919, 923 (1980); 14 M.R.S.A. § 8103(1). Even if plaintiffs succeeded in fitting their theory into one of the limited areas of governmental liability authorized in section 8104, they could not ultimately prevail, for by its terms any express retention of immunity listed in section 8103(2) operates "notwithstanding" the waivers of immunity in section 8104. Section 8103(2)(B)'s immunity from claims "result[ing] from" judicial or quasi-judicial acts is broad enough to encompass a breach of any duty the MDOT may have assumed in issuing its permit. That section's inclusion of permits granted "with conditions" plainly contemplates qualifications of the type the MDOT put on its permit here issued to the Town of Yarmouth.

## II.

■ The Superior Court dismissed plaintiffs' claim against the Town of Yarmouth for failure to comply with the applicable statute of limitations. Plaintiffs commenced their .action within the two-year period of limitations specified by the Maine Tort Claims Act. *See* 14 M.R.S.A. § 8110. However, 14 M.R.S.A. § 8113(2) [3] makes any statutory waiver of immunity outside the act the exclusive method of recovery in fact situations to which such other statute applies. Since plaintiffs allege that they received bodily injury and suffered damage to their automobile by reason of the ditch in Portland Street, their complaint on its face

---

3. 14 M.R.S.A. § 8113(2) (1980) reads in full:

   2. **Effect of other statutes concerning immunity.** When any other statute expressly provides a waiver of governmental, sovereign or official immunity, the provisions of that statute shall be the exclusive method for any recovery of funds in any fact situation to which that statute applies.

states a claim under the highway defect statute, 23 M.R.S.A. § 3655 (Supp.1981), which provides in part that:

> Whoever receives any bodily injury or suffers damage in his property through any defect or want of repair or sufficient railing in any highway, town way, causeway or bridge may recover for the same in a civil action, to be commenced *within one year* from the date of receiving such injury or suffering damage, of the county or town obliged by law to repair the same . . . .

(Emphasis added) The justice below reasoned that section 3655 fitted the facts of this case and, by operation of 14 M.R.S.A. § 8113(2), was plaintiffs' sole basis of recovery. Since plaintiffs filed suit after the expiration of section 3655's one-year period of limitations, he dismissed their action as time-barred.

We disagree with the Superior Court's application of 14 M.R.S.A. § 8113(2)'s exclusivity provision. If plaintiffs had alleged the existence of the highway defect as the only basis for their suit, section 3655 would indeed be their only way of recovering against the Town of Yarmouth. *See Martel v. Inhabitants of Town of Old Orchard Beach,* Me., 404 A.2d 994 (1979). They, however, allege a fact situation that, while including the existence of the highway defect, goes much beyond what is adequate to state a claim under section 3655. They allege, with sufficient definiteness to survive a motion to dismiss, *see Doane v. Pine State Volkswagen, Inc.,* Me., 377 A.2d 481, 484 (1977), a duty on the part of the Town to protect travelers from the highway defect by posting signs, lights and traffic offi-

cers and the Town's breach of that duty.[4] Thus, plaintiffs have pleaded all the elements of a negligence claim against the Town. The facts underlying their negligence claim, namely, the assumption by the Town (as the recipient from the MDOT of the highway opening permit) of a duty to protect the public and the Town's negligent failure to perform that duty, do not constitute a "fact situation to which that statute [*i. e.,* section 3655] applies." Section 3655 applies to the fact situation of the existence of a highway defect and nothing more. By its terms, then, section 8113(2) of the Tort Claims Act does not bar recovery under section 8104(4) making a "governmental entity . . . liable for its negligent acts . . . causing property damage, bodily injury or death . . . [a]rising out of and occurring during the performance of construction . . . on any highway . . .," at least in the special circumstances presented here of the Town's alleged duty to protect travelers and its alleged breach thereof.

By our view of the interrelation of the highway defect statute, section 3655, with the relevant Tort Claims Act provision, section 8104(4), an injured party may recover from a town i) only under section 3655 for a claim grounded solely on a highway defect, ii) only under section 8104(4) for a claim of negligence not involving a highway defect, and iii) under both section 3655 and section 8104(4) for a claim, as here, involving both a passive defect[5] and also actionable negligence.

All that we here hold is that plaintiffs have pleaded a negligence claim under section 8104(4) of the Tort Claims Act that on its face is actionable despite the exclusivity

---

4. The complaint *inter alia* alleges that:

    a. Plaintiffs' "car dropped into a large ditch, which . . . was not marked, said ditch having been constructed pursuant to highway opening permit number 2791" issued to the Town of Yarmouth.

    b. "The conditions that the highway opening permit was issued under are contained on the back of the permit" in Section D thereof.

    c. By Section D, paragraph 1(b) of the highway opening permit, one of the conditions under which it was issued to the Town of Yarmouth was that "The travelling public shall be adequately protected. . . . Work shall be signed, lighted and traffic officers will be supplied when necessary."

    d. "The accident . . . happened as a result of the negligence [of the Town] in failing to protect the Plaintiffs, the travelling public as set forth under Section D of the highway opening permit . . . ."

5. In *Brewer v. Inhabitants of Town of Cumberland,* Me., 311 A.2d 275 (1973), the complaint alleged both a highway defect and negligence on the part of the Town in failing to warn the motorist of the defect. Since that case arose prior to the enactment in 1977 of the Tort Claims Act, the only available basis for recovery was section 3655 with its one-year statute of limitations and its strict dollar ceiling on recovery.

provision of section 8113(2). That claim was brought within the two-year period of limitations prescribed by the Tort Claims Act, 14 M.R.S.A. § 8110, even though any claim for the highway defect under section 3655 is barred by the one-year limitation prescribed in that section. Our decision is merely that the complaint sets forth a section 8104(4) negligence claim that survives defendant Town's motion to dismiss on a statute of limitations ground. It remains for plaintiffs to prove their allegations that the Town did in truth have a legal duty arising under the highway opening permit and that the Town was negligent in performing that duty.

The entry must be:

Judgment of dismissal as to defendant State of Maine Department of Transportation affirmed.

Judgment of dismissal as to defendant Town of Yarmouth vacated; case remanded for proceedings consistent with the opinion herein.

All concurring.